UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CASEY MCCREADY,<br><br>          Plaintiff,<br><br>     v.<br><br>WELLPATH, et al.,<br><br>          Defendant. | Case No. 1:24-cv-01208-BAM (PC)<br><br>ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN DISTRICT JUDGE TO ACTION<br><br>FINDINGS AND RECOMMENDATIONS TO DISMISS ACTION, WITH PREJUDICE, FOR FAILURE TO STATE A CLAIM<br><br>(ECF No. 8)<br><br>**FOURTEEN (14) DAY DEADLINE** |

Plaintiff Casey McCready ("Plaintiff") is a former county jail inmate, current state prisoner, proceeding *pro se* and *in forma pauperis* in this civil rights action under 42 U.S.C. § 1983. The Court screened Plaintiff's complaint, and Plaintiff was granted leave to amend. Plaintiff's first amended complaint is before the Court for screening. (ECF No. 8.)

**I.     Screening Requirement and Standard**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b); 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret Serv.,* 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

## II.    Plaintiff's Allegations

Plaintiff is currently housed at Avenal State Prison. At the time of the events, Plaintiff was housed in the Madera County Jail. Plaintiff names as Defendants: (1) Wellpath,[1] (2) Nurse Victoria, (3) Victoria's supervisor, (4) ADA Coordinator, (5) medical staff at Madera Co. Jail, (6) Does 1-10, Wellpath Medical Staff.

In claim 1, Plaintiff alleges violation of his rights to medical care and medications, ADA equipment, and freedom from cruel and unusual punishment. Plaintiff alleges that Nurse Victoria forced Plaintiff to be injected by her with TB testing fluid. This happened after Plaintiff had twice refused the injection. She and other staff withheld Plaintiff's ADA approved shoes from CDCR. Victoria alone told Plaintiff that if Plaintiff refused again, medical would not renew Plaintiff's anti-inflammatory medications and that any sick call slips Plaintiff put in would be disregarded. Plaintiff said that he is an *Armstrong* class CDCR prisoner from Avenal State

---

[1] At the time the complaint was filed, Wellpath was in Bankruptcy proceedings, United States Bankruptcy Court for the Southern District of Texas, lead Case No. 24-90533-(ARP), and was subject to a stay of civil proceedings. The Court was recently informed that the stay as been lifted.

2

1 Prison.  Plaintiff's medications and shoes should have been granted through the reasonable
2 accommodation process.  Plaintiff asked Victoria to be clear:  If Plaintiff were to choose not to be
3 injected, Plaintiff would be denied medical access, medication and his shoes. In the past 18
4 months, Plaintiff had been tested 3 times and Plaintiff did not want it.  She confirmed that
5 Plaintiff's meds, shoes and sick call requests would be denied and disregarded. At that time under
6 threat, Plaintiff was injected with fluid against Plaintiff's free will under fear of medical access
7 being denied.  Plaintiff alleges he has chronic medication needs from a shattered pelvis.  Without
8 anti-inflammatory medicine, Plaintiff is crippled.  Without shoes, he cannot balance or walk well.
9 Plaintiff alleges he has the right to refuse the vaccine or other testing injections.

10    In claim 2, Plaintiff alleges that Victoria and medical staff at Madera County jail will not
11 disclose their names and wear their name tags identification cards backwards to conceal names.
12 Victoria through the threat forced Plaintiff to be injected with TB testing agent after he had
13 refused 2 separate times.

14    As remedies, Plaintiff requests compensatory damages.

15 **III.   Discussion**

16    Plaintiff's complaint fails to state a cognizable claim under 42 U.S.C. § 1983.  Plaintiff
17 cannot cure the deficiencies.

18            **Fourteenth Amendment Due Process – Denial of Medical Care**

19    Under the Fourteenth Amendment, pretrial jail detainees have the right to receive
20 adequate medical care during their detention. *Gordon v. County of Orange*, 888 F.3d 1118, 1125
21 (9th Cir. 2018); *see also Lolli v. County of Orange*, 351 F.3d 410, 418-19 (9th Cir. 2003). To
22 establish a deliberate indifference to medical needs claim against an individual defendant under
23 the due process clause of the Fourteenth Amendment, a pretrial detainee must show that:

24
> (i) the defendant made an intentional decision with respect to the conditions
25 under which the plaintiff was confined; (ii) those conditions put the plaintiff at
substantial risk of suffering serious harm; (iii) the defendant did not take reasonable
26 available measures to abate that risk, even though a reasonable official in the
circumstances would have appreciated the high degree of risk involved—making the
27 consequences of the defendant's conduct obvious; and (iv) by not taking such
measures, the defendant caused the plaintiff's injuries.
28

3

1    *Gordon*, 888 F.3d at 1125. The plaintiff must "prove more than negligence but less than

2    subjective intent—something akin to reckless disregard." *Id.* (quoting *Castro v. County of Los*

3    *Angeles*, 833 F.3d 1060 (9th Cir. 2016)).  Moreover, before it can be said that a prisoner's civil

4    rights have been violated, "the indifference to his medical needs must be substantial. Mere

5    'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action."

6    *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir.1980) (citing *Estelle*, 429 U.S. at

7    105–06).

8        Plaintiff fails to provide sufficient factual allegations to support a claim for inadequate

9    medical care. Plaintiff challenges the administration of tuberculosis tests but fails to allege any

10    risk of harm or that Plaintiff was in danger of harm. Plaintiff merely alleges that the tuberculosis

11    testing was against his wishes. Plaintiff fails to state a claim on this basis.

12        Indeed, California has created a comprehensive program for containing the serious

13    contagious disease of tuberculosis in the incarceration setting.  California Penal Code §§ 7570-

14    7576.  Here, it appears Nurse Victoria was following state law for testing of inmates. See Penal

15    Code § 7570 ("In enacting this chapter, the Legislature hereby finds and declares that tuberculosis

16    is a serious contagious disease. It is vital to the health and safety of inmates, employees, and the

17    public at large, to conduct appropriate examinations, testing, and treatment in order to control the

18    spread of tuberculosis in California's institutions.")  The frequency of the tuberculosis tests are

19    mandated by state law. Penal Code § 7573 ("The chief medical officer shall ensure that

20    examinations or tests for tuberculosis on all inmates or wards are conducted upon incarceration

21    and at least annually thereafter.")  Should an inmate refuse to be voluntarily tested, that inmate

22    may be involuntarily tested. Penal Code § 7574 ("any inmate or ward who refuses to submit to an

23    examination, test, or treatment for tuberculosis . . . or refuses treatment for tuberculosis, or who,

24    after notice, violates, or refuses or neglects to conform to, any rule, order, guideline, or regulation

25    prescribed by the department with regard to tuberculosis control shall be tested involuntarily and

26    may be treated involuntarily.")

27        Courts around the country have held that prisons and jails have legitimate reasons to

28    conduct regular testing of prisoners for contagious diseases. Under these circumstances,

4

1  Defendants had a legitimate—indeed compelling—governmental interest in testing all prisoners
2  for the presence of tuberculosis, in order to meet its obligations to control contagion and to
3  protect its other prisoners and staff. *See Jolly v. Courghlin*, 76 F.3d 468, 477 (2d Cir. 1996)
4  (holding that a prison had a compelling state interest in mandatory tuberculosis testing); *Dunn v.*
5  *White*, 880 F.2d 1188, 1195 (10th Cir. 1989) (holding that a prison had a legitimate penological
6  interest in ascertaining the extent of contagion that justified coercive blood testing for AIDS);
7  *Wilson v. Wilkinson*, 608 F. Supp. 2d 891 (S.D. Ohio 2007) (upholding state statute requiring
8  mandatory DNA testing of prisoners against Fourth Amendment challenge); *see also McDougald*
9  *v. Stone*, No. 1:17-cv-72, 2017 WL 8222430, at *5 (S.D. Ohio Aug. 22, 2017) (finding legitimate
10  penological interest in mandatory blood-draw of prisoner who spit on officer).

11  Plaintiff's amended complaint, viewed in the light most favorable to Plaintiff, confirms
12  that Defendants were acting in compliance with California state statutes. Defendants were
13  obligated to test plaintiff for tuberculosis under California law, and had authority to impose such
14  tests on prisoners involuntarily.  Penal Code §§ 7570, 7574.  Such code sections have not been
15  found to be unconstitutional.

16  **Coercion of Testing**

17  Plaintiff fails to state a claim that he was coerced to take the testing. As stated above,
18  Plaintiff could have been involuntary tested.  To state an excessive force claim, plaintiff must
19  allege facts showing that he was subjected to excessive physical force that was applied
20  "maliciously and sadistically to cause harm" rather than "in a good-faith effort to maintain or
21  restore discipline." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam) (internal quotation
22  omitted); *Gosztyla v. Auld*, No. 2:22-CV-01276-EFB (PC), 2022 WL 4388747, at *2 (E.D. Cal.
23  Sept. 22, 2022) (failed to state a claim for being verbally coerced to take a COVID test).

24  Plaintiff alleges he was threatened that if he did not take the tuberculosis test, his
25  medications and shoes would be taken away.  However, Plaintiff does not allege the threats
26  happened and that he was deprived of any medically necessary medication or shoes.  Even if he
27  were so deprived, courts have upheld the punishment of inmates who refused the tuberculosis
28  test. *See*, *e.g., Washington v. Cambra*, No. C 95-3216 TEH, 1996 WL 507313, at *4 (N.D. Cal.

Aug. 27, 1996) (upholding use of force).  Other courts outside the Ninth Circuit have similarly upheld mandatory and forced tuberculosis testing of prisoners. *See Mack v. Campbell*, 1991 WL 243569 (6th Cir. 1991) (administrative segregation for refusing tuberculosis screening test does not violate due process); *Karolis v. New Jersey Dept. of Corr.*, 935 F. Supp. 523, 527-28 (D. N.J. 1996) (involuntary administration of TB test to prisoner upheld against challenge under Religious Freedom Restoration Act because there is a compelling interest in stopping the spread of TB in a prison)

IV.     **Conclusion and Recommendation**

For the reasons discussed, the Court finds that Plaintiff's first amended complaint fails to state a cognizable claim for relief.  Despite being provided with the relevant legal standards, Plaintiff has been unable to cure the deficiencies in his complaint and cannot cure the deficiencies.  Further leave to amend is not warranted.  *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

Accordingly, the Court HEREBY ORDERS the Clerk of the Court to randomly assign a District Judge to this action.

IT IS HEREBY RECOMMENDED that this action be dismissed, with prejudice, for failure to state a cognizable claim upon which relief may be granted.

These Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after being served with these Findings and Recommendation, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **July 18, 2025**                    /s/ *Barbara A. McAuliffe*
                                                                     UNITED STATES MAGISTRATE JUDGE